## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISON

| | |
|---|---|
| VETNOS, LLC, | |
| *Plaintiff*, | |
| | |
| v. | Civil Action No. 1:23-cv-2746 |
| | |
| SIDEPRIZE LLC d/b/a PRIZEPICKS, | |
| *Defendant*. | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## <u>FOR FAILURE TO STATE A CLAIM</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

I.   INTRODUCTION ............................................................................1

II.  THE PATENT INFRINGEMENT CLAIMS SHOULD BE DISMISSED
BECAUSE THEY FAIL TO COMPLY WITH 35 U.S.C. § 101. ...........................1

 A. Legal Standard ..............................................................................1

 B. Factual Background ........................................................................2

 C. *Alice* Step One: The Claims are Directed to the Abstract Idea of Managing
 Skills-Based Fantasy-Sports Activities..................................................4

  1.  The Asserted Patents Are Directed to the Abstract Ideas of the Rules of a
  Contest and Collecting, Analyzing, and Displaying Information. ...................5

  2.  The Asserted Patents Are Abstract Because They Can Be Carried Out
  Mentally and Only Rely on Generic Computer Components to Achieve Results-
  Oriented Limitations .....................................................................9

 D. *Alice* Step Two: The Claims Add No Inventive Concept ............................11

III.  THE COMPLAINT FAILS TO STATE A CLAIM FOR TRADE SECRET
MISAPPROPRIATION ........................................................................13

 A. Legal Standard ............................................................................13

 B. The Complaint Fails to Identify or Plead the Existence of Protectable Trade
 Secrets .....................................................................................14

  1.  Vetnos Fails to Identify the Asserted Secrets with Particularity. ..............15

  2.  Vetnos Fails to Allege that the Asserted Secrets Are Undisclosed ...........19

  3.  Vetnos Fails to Allege How the Asserted Secrets Derive Economic Value
  from Purported Secrecy. .................................................................20

  4.  Vetnos Fails to Allege It Took Efforts to Protect the Secrecy of the Asserted
  Secrets .....................................................................................21

 C. The Complaint Fails To Allege Any Act of Misappropriation .....................22

IV.  CONCLUSION .............................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) ........................................................................ 2

*Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*,
    678 F. App'x 839 (11th Cir. 2017) ................................................................. 20

*Agilysys, Inc. v. Hall*,
    258 F. Supp. 3d 1331 (N.D. Ga. 2017) ........................................................... 23

*Alice Corp. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ........................................................................ 2, 4, 11, 12

*Am. Hearing Aid Assocs., Inc. v. GN Resound N. Am.*,
    309 F. Supp. 2d 694 (E.D. Pa. 2004) .............................................................. 20

*Argos USA LLC v. Young*,
    No. 1:18-CV-02797-ELR,
    2019 WL 4125968 (N.D. Ga. June 28, 2019) ................................................ 24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................. 1, 13, 23, 25

*Avnet, Inc. v. Wyle Labs.*,
    437 S.E.2d 302 (Ga. 1993) .............................................................................. 19

*AWP, Inc. v. Henry*,
    No. 1:20-cv-01625-SDG,
    2020 WL 6876299 (N.D. Ga. Oct. 28, 2020) ................................................ 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 13

*CG Tech. Dev. LLC v. DraftKings, Inc.*,
    No. 2:16-cv-00781-RCJ-VCF,
    2016 WL 7190547 (D. Nev. Dec. 12, 2016) ............................................. 7, 11

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ........................................................................ 3

*DynCorp Int'l v. AAR Airlift Grp., Inc.*,
    664 F. App'x 844 (11th Cir. 2016) ................................................................. 16

*EarthCam, Inc. v. OxBlue Corp.*,
    49 F. Supp. 3d 1210 (N.D. Ga. 2014),
    *aff'd*, 703 F. App'x 803 (11th Cir. 2017) ............................................ 14, 15, 18

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ....................................................... 8, 10, 11, 12

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ...................................................5, 12
*FERCO Enters., Inc. v. Taylor Recycling Facility LLC*,
  No. 1:05-cv-2980-ODE,
  2007 WL 9701361 (N.D. Ga. Oct. 16, 2007),
  *aff'd*, 291 F. App'x. 304 (11th Cir. 2008) ......................................16
*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
  500 F.3d 1276 (11th Cir. 2007) .......................................................13
*Gaelco S.A. v. Arachnid 360, LLC*,
  293 F. Supp. 3d 783 (N.D. Ill. 2017).........................................passim
*In re Marco Guldennar Holding B.V.*,
  911 F.3d 1157 (Fed. Cir. 2018) ....................................................6, 8
*In re Smith*,
  815 F. 3d 816 (Fed. Cir. 2016) .................................................6, 7, 8
*Integrated Tech. Sols., LLC v. iRacing.com Motorsport Simulations, LLC*,
  630 F. Supp. 3d 276 (D. Mass. 2022)................................................5
*Leo Pubs., Inc. v. Reid*,
  458 S.E.2d 651 (Ga. 1995) ..............................................................19
*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (U.S. 2012) ..................................................................12
*Medafor, Inc. v. Starch Med. Inc.*,
  No. 09-cv-0441,
  2009 WL 2163580 (D. Minn. July 16, 2009).............................17, 18
*Medicrea USA, Inc. v. K2M Spine, Inc.*,
  17 Civ. 8677 (AT),
  2018 WL 3407702 (S.D.N.Y. Feb. 7, 2018) ...................................20
*Mobile Telecomms. Techs., LLC v. United Parcel Serv. Inc.*,
  173 F. Supp. 3d 1324 (N.D. Ga.)........................................................5
*NEXRF Corp. v. Playtika, Ltd.*,
  547 F. Supp. 3d 977 (D. Nev. 2021) .......................................3, 6, 10
*Northstar Healthcare Consulting, LLC v. Magellan Health, Inc.*,
  No. 1:17-cv-1071-ODE,
  2020 WL 10486256 (N.D. Ga. Feb. 20, 2020)................................14
*Pegasus Imaging Corp. v. Northrop Grumman Corp.*,
  No. 8:07-CV-1937-T-27EAJ,
  2008 WL 5099691 (M.D. Fla. Nov. 25, 2008) ................................21
*Pellerin v. Honeywell Int'l, Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012) ............................................24

*Penalty Kick Mgmt. Ltd. v. Coca Cola Co.,*
  318 F.3d 1284 (11th Cir. 2003) .......................................................................23
*Planet Bingo, LLC v. VKGS, LLC,*
  576 Fed. Appx. 1005 (Fed. Cir. 2014) .......................................................passim
*Power Integrations, Inc. v. Silanna Semiconductor N. Am., Inc.,*
  C.A. No. 19-1292-LPS,
  2020 WL 3508078 (D. Del. June 29, 2020) ................................................15, 18
*Putters v. Rmax Operating, LLC,*
  No. 1:13-CV-3382-TWT,
  2014 WL 1466902 (N.D. Ga. Apr. 15, 2014).....................................................25
*RaceTech LLC v. Kentucky Downs, LLC,*
  167 F. Supp. 3d 853 (E.D. Kentucky 2016),
  *aff'd,* 676 Fed. App'x. 1009 (Fed. Cir. 2017)..............................................6, 11
*Roboserve, Ltd. v. Tom's Foods, Inc.,*
  940 F.2d 1441 (11th Cir. 1991) .......................................................................20
*Secured Mail Sols. LLC v. Universal Wilde, Inc.,*
  873 F.3d 905 (Fed. Cir. 2017) ............................................................................2
*Space Data Corp. v. X,*
  No. 16-cv-03260-BLF,
  2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .............................................17, 18
*TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo,*
  966 F.3d 46 (1st Cir. 2020).............................................................................15, 16
*Universal Secure Registry LLC v. Apple Inc.,*
  10 F. 4th 1342 (Fed. Cir. 2021) ..........................................................................2
*Valentine Commc'ns., LLC v. Six Continent Hotels, Inc.,*
  389 F. Supp. 3d 1223 (N.D. Ga. 2019) (Ray, J.)................................................4
*Zoom Imaging Sols., Inc. v. Roe,*
  No. 2:19-cv-01544,
  2019 WL 5862594 (E.D. Cal. Nov. 8, 2019) .............................................17, 18

**Statutes**
35 U.S.C. § 101 ..............................................................................1, 2, 3, 10
Defend Trade Secret Act, 18 U.S.C. § 1836 *et seq.*............................13, 14, 22
Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 *et seq.* .................13, 14, 22

**Rules**
Fed. R. Civ. P. 12(b)(6)...........................................................................1, 2

## I.    INTRODUCTION

Defendant SidePrize LLC DBA PrizePicks ("PrizePicks") submits this motion to dismiss Plaintiff Vetnos, LLC's ("Vetnos") Complaint in its entirety for failing to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

On June 20, 2023, Vetnos filed its initial Complaint alleging two general categories of claims, all of which should be dismissed.[1] First, Vetnos alleges that PrizePicks infringes three Vetnos patents, which are all directed to ineligible subject matter. Second, Vetnos alleges insufficient and conclusory pleadings which fail to provide the requisite notice to support its claims of trade secret misappropriation.

## II.    THE PATENT INFRINGEMENT CLAIMS SHOULD BE DISMISSED BECAUSE THEY FAIL TO COMPLY WITH 35 U.S.C. § 101.

### A. Legal Standard

To survive a motion to dismiss, a complaint must set forth sufficient facts which, when accepted as true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept all alleged facts as true at the motion to dismiss stage, courts are not required to accept as true a complaint's legal conclusions or "allegations that contradict matters properly subject to judicial notice or

---

[1] The allegations and facts are taken from Vetnos' Complaint and exhibits. No statement made in this motion should be taken as an admission as to any allegation set forth in the Complaint or that PrizePicks offers the same types of concepts described in the patents.

by exhibit, such as a patent's claims and its specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017).

The Federal Circuit has repeatedly recognized the propriety of determining patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion in cases where there are no factual allegations that, taken as true, prevent an eligibility determination as a matter of law. *Universal Secure Registry LLC v. Apple Inc.*, 10 F. 4th 1342, 1346 (Fed. Cir. 2021) (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

To make an eligibility determination under § 101, courts apply the two-step framework established in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). At the first step, courts determine whether the claim is "directed to" a patent-ineligible concept, such as an abstract idea. *Id.* If so, courts proceed to step two and consider the claim elements both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. *Id.*

### B. Factual Background

Vetnos alleges that PrizePicks infringes U.S. Patent Nos. 10,353,543 (the "543 Patent"), 11,157,147 (the "147 Patent"), and 11,579,754 (the "754 Patent")

(collectively, the "Asserted Patents").[2] Vetnos concedes that Claim 1 of each Asserted Patent is "representative" (collectively, the "Representative Claims"). Compl. ¶¶ 101, 119, 139. Although they contain minor differences,[3] the Representative Claims all describe general steps for presenting and operating fixed-odds fantasy sports contests. *See* ECF No. 1-3, 37:2-63; ECF No. 1-4, 37:22-38:21; ECF No. 1-5, 37:2-38:7. *See also Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (affirming holding that a claim is representative when other claims are substantially similar and linked to the same abstract idea). Accordingly, it is appropriate for the Court to treat any one of the Representative Claims as representative of each claim of the Asserted Patents for the purposes of a § 101 analysis. *See, e.g.*, *NEXRF Corp. v. Playtika, Ltd.*, 547 F. Supp. 3d 977, 985 n.6 (D. Nev. 2021).

In particular, the Representative Claims recite a system - composed of a non-transitory storage medium, an activity server system, and a device storage system coupled to the activity server system - used to perform two computer processes. First, the Representative Claims recite a process in which (1) a set of matchups, along with the associated fixed-payout odds based on winning user matchup selections, are sent to

---

[2] The Asserted Patents share a common specification and all purport to claim priority to provisional application nos. 62/047,473 and 62/106,613.

[3] A chart highlighting these minor differences is attached hereto as Exhibit A.

a user's presentation device, (2) a user's selected winners are received, (3) the event data is updated based on the actual outcomes of the events, and (4) the updated event data is used to calculate and assign payouts based on both the user's selections and the fixed payout odds. Second, the Representative Claims recite a separate process wherein (1) the activity server system receives scheduling information about a plurality of games, (2) the activity server system determines which athletes are expected to compete based on data collected, (3) the activity server system ranks or evaluates the athletes based on historical fantasy point performances values, which are based upon the calculated expected fantasy point performance values in the next game, and (4) the activity server system displays the athletes according to the aforementioned ranking so the athletes may be assigned to a matchup. The Asserted Patents make clear that no specialized or improved computer equipment is required. *See, e.g.*, ECF No. 1-3, 543 Patent, at 23:47-26:33.

### C. *Alice* Step One: The Claims are Directed to the Abstract Idea of Managing Skills-Based Fantasy-Sports Activities

In step one of the *Alice* analysis, a court must determine whether the character of the claim as a whole is directed to an abstract idea within the meaning of § 101. *Alice*, 573 U.S. at 219. In the words of this Court, "[t]he trick is to try and detect the beating heart of the patent, its animating function." *Valentine Commc'ns., LLC v. Six Continent Hotels, Inc.*, 389 F. Supp. 3d 1223, 1230 (N.D. Ga. 2019) (Ray, J.) (quoting

*Mobile Telecomms. Techs., LLC v. United Parcel Serv. Inc.*, 173 F. Supp. 3d 1324, 1330 (N.D. Ga.)). Where, like here, computer-implemented method claims are implicated, the question under *Alice* step one is whether the claims implement an "improvement in computer capabilities" or instead "a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). In making such a determination, courts may find it sufficient to compare the claims at issue to claims found to be directed to an abstract idea in previous cases. *Integrated Tech. Sols., LLC v. iRacing.com Motorsport Simulations, LLC*, 630 F. Supp. 3d 276, 284 (D. Mass. 2022) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d at 1327, 1334 (Fed. Cir. 2016)); *Gaelco S.A. v. Arachnid 360, LLC*, 293 F. Supp. 3d 783, 789 (N.D. Ill. 2017). Here, the Asserted Patents claim the abstract idea of collecting, analyzing, and presenting data related to skill-based fantasy-type contests, which are strikingly similar to claims of other patents that have previously been invalidated pursuant to *Alice*. *See infra*. p. 7.

    1.  **The Asserted Patents Are Directed to the Abstract Ideas of the Rules of a Contest and Collecting, Analyzing, and Displaying Information.**

Vetnos acknowledge that the Asserted Patents are directed to "providing daily fantasy sports games in which fans can test their sports knowledge and prediction skills and win prizes that are known, or 'fixed,' in advance." Compl. ¶ 11. The Asserted Patents merely claim the abstract ideas of collecting, analyzing, and presenting data so

as to manage and operate skills-based contests, which is patent-ineligible subject matter.

The Federal Circuit has consistently held that patents claiming methods or systems for managing and/or operating a game or contest are directed to patent-ineligible abstract ideas. [4] *See In re Marco Guldennar Holding B.V.*, 911 F.3d 1157, 1160-61 (Fed. Cir. 2018) (holding claims reciting steps of placing a wager, rolling the dice, and paying a payout amount if at least one outcome occurs were directed to abstract idea of "rules for playing a dice game"); *In re Smith*, 815 F. 3d 816, 817-19 (Fed. Cir. 2016) (holding that methods for conducting variation of card games were directed to abstract ideas); *Planet Bingo, LLC v. VKGS, LLC*, 576 Fed. Appx. 1005, 1007 (Fed. Cir. 2014) (holding that methods and systems of remotely managing bingo games were directed to abstract ideas); *RaceTech LLC v. Kentucky Downs, LLC*, 167 F. Supp. 3d 853, 861-62 (E.D. Kentucky 2016), *aff'd,* 676 Fed. App'x. 1009 (Fed. Cir. 2017) (holding that methods and systems relating to pari-mutuel wagering on historical events were directed to abstract ideas); *NEXRF Corp.*, 547 F. Supp. 3d at 987 (holding that claim reciting method for remotely playing slot machine was directed to an abstract

---

[4] Although many of the patents at issue in the cited cases were directed to wagering games based on probability, the Asserted Patents in this case are directed to skill-based fantasy-type gaming contests. While this is a meaningful and important distinction in other contexts, it does not affect the Section 101 analysis here. PrizePicks' comparison of the Asserted Patents to patents directed at gaming is not an admission that daily fantasy sports contests are related to a wagering game or sports betting.

idea); *Gaelco S.A.*, 293 F. Supp. 3d at 790 (holding that system and method for remotely refereeing dart games was directed to an abstract idea); *CG Tech. Dev. LLC v. DraftKings*, *Inc.*, No. 2:16-cv-00781-RCJ-VCF, 2016 WL 7190547, at \*13-14 (D. Nev. Dec. 12, 2016) (holding that system and method for receiving an entry from a fantasy-sports player, presenting it, and recording the parameters was directed to an abstract idea).

The Representative Claims here are no less abstract. The Representative Claims recite a process (the "Event Process") in which: (1) a set of matchups, along with the associated fixed-payout odds, are sent to a user; (2) the user selects winners for the matchups that are received by the server; (3) the event data is updated based on actual events; (4) the updated event data is used to select whether each user, based only on their own selections, is a winner or loser; and (5) payouts are calculated and assigned. *See, e.g.*, ECF No. 1-3, 543 Patent, 2:44-3:5, 37:19-43. The limitations of the Event Process are analogous to those at issue in *In re Smith*, in which the patent recited the steps for conducting (or, in other words, the rules for playing) a variation on blackjack. 815 F.3d at 819. The Federal Circuit analogized claims directed to rules for conducting a game with other fundamental economic practices found abstract by the Supreme Court, observing that a game is effectively a method of exchanging and resolving financial obligations, held to be abstract in *Alice*, and is analogous to the method of hedging risk held to be abstract in *Bilski v. Kappos*, 561 U.S. 593, 611 (2010). *In re*

*Smith*, 815 F.3d at 818-19. Ultimately, the Federal Circuit "conclude[d] that the rejected claims, describing a set of rules for a game, [were] drawn to an abstract idea." *Id.* at 819 (followed by *In re Marco Guildnaar Holding B.V.*, 911 F.3d at 1161). Therefore, the Event Process simply recites the steps for a skills-based contest and is tantamount to claiming the rules of a generic game such as chess—a set of rules which are not patentable subject matter.

The Representative Claims also recite a process (the "Ranking Process") in which (1) data is received from a source of information, (2) athlete and game data is identified from information received, (3) that data is used to rank athletes using an unspecified methodology, and (4) the rankings are displayed so that the matchmaker can assign athletes to the matchups to be used in the contests. *See, e.g.*, ECF No. 1-3, 37:44-63. The limitations of the Ranking Process are analogous to those held to be directed to an abstract idea in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). There, the claims at issue described a process for monitoring the performance of an electric power grid in real-time by collecting data from multiple sources, analyzing the data, and displaying the results. *Id.* at 1354. Although the data in *Electric Power* concerned the performance of a power grid rather than the fantasy performance of athletes, the Federal Circuit's reasoning has been applied to patents directed to collecting, analyzing, and displaying information in other contexts. Specifically, in *Gaelco S.A*, the Northern District of Illinois adopted the Federal

Circuit's reasoning and held that the patent at issue was directed to an abstract idea because the claims merely described "a system and method whereby a [remote] referee [of a dart competition] collects information (by viewing a dart competition), analyzes it (determining whether the players comply with a condition of play), and then displays a decision (about whether an infraction was committed)." 293 F. Supp. 3d at 790. Here, the Ranking Process similarly collects information (by receiving schedule data and accessing athlete information from other sources), analyzes it (determining athletes expected to compete and ranking them by historical fantasy point performance values), and displays the decision (by displaying the athletes by their ranking). Following the reasoning of *Electric Power* and its progeny, the limitations of the Ranking Process are directed to a patent-ineligible abstract idea.

> **2.   The Asserted Patents Are Abstract Because They Can Be Carried Out Mentally and Only Rely on Generic Computer Components to Achieve Results-Oriented Limitations.**

In addition to the Event Process and Ranking Process described above, the Asserted Patents also claim "a non-transitory storage medium," "at least one activity server system," and a "device storage system." However, claim limitations performed using generic computer components that could also be done mentally are directed to abstract ideas and ineligible for patent protection. *See Planet Bingo*, 576 Fed. Appx. at 1008.

For example, some of the claims at issue in *NEXRF* were "processes that could be carried out in existing computers, as evidenced by the fact that the [] patent's specification does not describe any of the computerized components of the purported invention as novel or representing improvements on the prior art." 547 F. Supp. at 987-88. There, even where the game ran on a server, the Court held that the patent was no less abstract. *Id.* at 988. Here, the Asserted Patents are made no less abstract by their reliance on servers and storage systems, as the specifications do not claim that the servers or storage databases are novel or an improvement on the prior art.

The result-focused, functional character of the claim language highlights its similarity to claims held ineligible under § 101, "especially in the area of using generic computer and network technology to carry out economic transactions." *See Elec. Power Grp.*, 830 F.3d at 1356. Like the patents held to be abstract in *NEXRF*, the Asserted Patents here improperly focus on the end result and not how they perform any of the functions they purport to include. *See* 547 F. Supp. 3d 977.

Regardless of how the claimed generic computer components achieve the claimed method, the Asserted Patents are directed to abstract ideas because each step of the claimed methods could be achieved through ordinary mental steps without technological assistance. *See Planet Bingo*, 576 Fed. Appx. at 1007. For instance, a human could research schedules and athlete information, rank athletes, and make necessary calculations all by hand. The District of Nevada characterized a claim

requiring a server, processor, and a memory and involving receiving a wager from a player, presenting it to other players, receiving an acceptance of the wager from a second player and recording the parameters of the accepted wager as "a textbook example of a computer utilized for its generic computing abilities to perform abstract calculations that could be performed in the mind of a sufficiently intelligen[t] person" that should therefore be dismissed under § 101. *CG Tech. Dev. LLC*, 2016 WL 7190547, at *4. Although performing the claimed method manually would be cumbersome, such impracticalities do not impact the analysis of whether the Asserted Patents are directed to abstract ideas. *See Planet Bingo*, 576 Fed. Appx. at 1008; *RaceTech*, 167 F. Supp. 3d at 862. Because the "claims do not recite 'any particular assertedly inventive technology,' but instead merely recite the use of existing technology as a tool to implement an abstract idea," the Court should hold that the Asserted Patents are directed to an abstract idea. *Gaelco S.A.*, 293 F. Supp. at 791 (quoting *Elec. Power Grp.*, 830 F.3d at 1354).

### D. *Alice* Step Two: The Claims Add No Inventive Concept

The claims of the Asserted Patents, when considered both individually and "as an ordered combination," lack a sufficient "inventive concept" to transform them from an abstract idea to a patent-eligible invention. *Alice*, 573 U.S. at 221. Moreover, the inventive concept cannot come from just applying the abstract idea itself to a technical context. *Id*. Once the claims directed to the abstract ideas of participating in an event

and the method of collecting, analyzing, and displaying a determination about the data are removed, all that remains are the claim limitations requiring the use of generic computer components. However, the law is clear that "if a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,' . . . that addition cannot impart patent eligibility." *Alice*, 573 U.S. at 224 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 84 (U.S. 2012)).

Here, like in *Electric Power*, *Planet Bingo*, and *Gaelco S.A.*, the Asserted Patents do not recite any specific technological improvement. *See Elec. Power*, 830 F.3d at 1354 (distinguishing the claims in *Enfish*, 822 F.3d at 1335-36, which focused on "a specific improvement" in computer functioning with the claims at issue, which focused "on certain independently abstract ideas that use computers as tools"); *Planet Bingo*, 576 Fed. Appx. at 1008 (holding that claims' requirement for a computer, a memory, an input, and other hardware does not establish inventive concept); *Gaelco S.A.*, 293 F. Supp. 3d at 791-92 (holding that no inventive concept exists where the asserted patents do not recite any special technology is involved). The Complaint and Asserted Patents are devoid of any suggestion of any other inventive concept. Because the claims recite a generic computer implementation of an abstract idea without any additional inventive concept sufficient to transform the Asserted Patents' claimed subject matter into a

patent-eligible application, the Court should hold that the Asserted Patents are invalid and dismiss Counts I-III of the Complaint.

## III.  THE COMPLAINT FAILS TO STATE A CLAIM FOR TRADE SECRET MISAPPROPRIATION

Vetnos' claims under the Defend Trade Secret Act, 18 U.S.C. § 1836 *et seq.* ("DTSA"), and the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 *et seq.* ("GTSA"), should be dismissed because Vetnos fails to allege the existence of a protectable trade secret and fails to allege any misappropriation (even assuming any trade secrets were identified and protectable). Vetnos' trade secret claims are tenuously tethered to the hiring of a former Vetnos employee, Steven Kerstein, after PrizePicks had already developed its daily fantasy sports service.

### A. Legal Standard

A complaint containing only "'labels and conclusions' or a 'formulaic recitation of the elements'" fails to plead a claim for relief. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]hile notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282–83 (11th Cir. 2007) (internal quotation marks omitted).

Under both the DTSA and GTSA, a claim for trade secret misappropriation requires, *inter alia*, a "showing that: (1) the material at issue is a trade secret and (2) the defendant misappropriated that trade secret." *Northstar Healthcare Consulting, LLC v. Magellan Health, Inc.*, No. 1:17-cv-1071-ODE, 2020 WL 10486256, at *31 (N.D. Ga. Feb. 20, 2020). To adequately plead the existence of a protectable trade secret under the GTSA, the plaintiff must establish that the purported trade secrets contain: "(i) information not commonly known by or available to the public, (ii) which derives economic value from not being generally known to or ascertainable by proper means by others who can obtain economic value from the information; and (iii) that was subject to reasonable efforts to maintain its secrecy." *EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1224–25 (N.D. Ga. 2014), *aff'd*, 703 F. App'x 803 (11th Cir. 2017) (internal citations omitted). The same requirements exist under federal law. *See* 18 U.S.C. § 1839(3) (defining trade secrets similarly). "Misappropriation" under the GTSA or DTSA requires improper acquisition, disclosure, or use of a trade secret. *See* 18 U.S.C. § 1839(5); O.C.G.A. § 10-1-761(2).

### B. The Complaint Fails to Identify or Plead the Existence of Protectable Trade Secrets

Even accepting Vetnos' allegations as true (and they are not), Vetnos fails to plausibly plead the existence of protectable trade secrets. In particular, Vetnos attempts to identify four general categories of trade secrets: (i) methods for managing risk ("choice volume, risk correlation, risk concentration, sustained P&L stability, and card

republication"); (ii) techniques for producing daily 50/50 matchups ("data sources, data translation, and formulas and algorithms used to analyze player data"); (iii) "marketing strategies for fixed-odds daily fantasy sports games"; and (iv) customer data ("the identities, habits, preferences, and purchase history of GSN customers") (collectively, the "Asserted Secrets"). Compl. ¶ 28. However, as discussed in more detail below, these vaguely defined categories are not identified with sufficient particularity to provide fair notice of the scope of Vetnos' claims and survive a motion to dismiss. *See infra* § III.B.1. Moreover, Vetnos fails to allege that the Asserted Secrets were not disclosed to the public, *see infra* § III.B.2, that the Asserted Secrets derived economic value from their secrecy, *see infra* § III.B.3, and that it took efforts to protect the secrecy of the Asserted Secrets, *see infra* § III.B.4, as required to adequately plead the existence of a protectable trade secret. *See Earthcam*, 49 F.Supp. 3d at 1224-25.

## 1. Vetnos Fails to Identify the Asserted Secrets with Particularity.

At the outset, Vetnos fails to identify the Asserted Secrets with sufficient particularity. *See TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 53-54 (1st Cir. 2020). An "open-ended and seemingly boundless definition does not provide fair notice of the scope of [a] Plaintiff's trade secret misappropriation claim." *Power Integrations, Inc. v. Silanna Semiconductor N. Am., Inc.*, C.A. No. 19-1292-LPS, 2020 WL 3508078, at *3 (D. Del. June 29, 2020). This requirement exists to

provide fair notice to the defendant and "to permit a court to apply the criteria for protection . . . and to determine the fact of an appropriation." *TLS*, 966 F.3d at 53; *see also FERCO Enters., Inc. v. Taylor Recycling Facility LLC*, No. 1:05-cv-2980-ODE, 2007 WL 9701361, at *20 (N.D. Ga. Oct. 16, 2007), *aff'd*, 291 F. App'x 304 (11th Cir. 2008) (dismissing claims for plaintiff's failure to "sufficiently tell the Court what it seeks to protect").[5]

*Methods for managing risk*. Vetnos' vague identification of "methods, strategies, and know-how for managing risk associated with providing fixed-odds daily fantasy sports games, including choice volume, risk correlation, risk concertation, sustained P&L stability, and card republication," Compl. ¶ 28, fails to give sufficient notice of what information it allegedly claims as a trade secret. Without even attempting to define or explain those terms, Vetnos fails to disclose what it seeks to protect, making it impossible for PrizePicks or the Court to determine whether the Asserted Secrets have been publicly disclosed by Vetnos or whether they contain information that is derived from data already in the public domain. *See FERCO*, 2007 WL 9701361, at *20 ("Categories such as 'Instrument data,' 'System performance and efficiencies,' and

---

[5] While the standard for identifying trade secrets is lower at the motion to dismiss stage than if a claim proceeds beyond the pleading stage, a plaintiff still must "allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016).

'Operating methodology and procedures' do not clarify for the Court exactly what Plaintiffs are trying to protect."); *see also Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (dismissing trade secret claims where plaintiff "has not made clear which aspects of its technology and other information . . . are secret"); *Zoom Imaging Sols., Inc. v. Roe*, No. 2:19-cv-01544, 2019 WL 5862594, at *5 (E.D. Cal. Nov. 8, 2019) (dismissing a trade secret claim as insufficiently particular where plaintiff "refers only to 'business information'"); *Medafor, Inc. v. Starch Med. Inc.*, No. 09-cv-0441, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009) (dismissing for lack of particularity a claim alleging as trade secrets "business methodologies, formulas, devices, and compilations of information, including suppliers and customers"). Without more detail, which is already in Vetnos' possession, PrizePicks and the Court are left to guess what "methods, strategies, and know-how" for managing the various types of risk associated with fixed-odds fantasy games Vetnos claims to be protectable trade secrets.

***Techniques for producing daily 50/50 matchups.*** The allegations as to Vetnos' "techniques for producing daily 50/50 matchups," Compl. ¶ 28, likewise fail to satisfy the pleading standard. The Complaint does not specify what "data sources, data translation, and formulas and algorithms used to analyze player data" Vetnos claims as a trade secret or why such information qualifies for trade secret protection. *Space Data*,

2017 WL 5013363, at *2 (dismissing claim where plaintiff alleged as trade secret only categories of "data"); *Zoom Imaging*, 2019 WL 5862594, at *5 (dismissing claim where plaintiff "refers only to 'business information'"); *Medafor*, 2009 WL 2163580, at *1 (similar). Such conclusory allegations are insufficient. *Power Integrations*, 2020 WL 3508078, at *3 (dismissing claim for insufficient particularity where the alleged trade secrets were, among other things, "product forecasts . . . business opportunities and strategies, marketing and sales projections, and business plans"). Moreover, third-party "data sources" used in the Daily Fantasy Sports industry are not trade secrets, because by their very nature, third-party data sources are marketed and offered to the public.

Nor does Vetnos allege, beyond a conclusory allegation, what independent economic value it derives from keeping its "techniques for producing 50/50 matchups" secret, Compl. ¶ 29, or what measures it took to protect its alleged Asserted Secrets Compl. ¶ 30. *See EarthCam*, 49 F. Supp. 3d at 1227 (trade secrets inadequately defined where plaintiff "does not explain why it 'derives economic value' from the use of pre-set archiving and deep-cycle batteries, or its relationship with Sunwize, from not 'being generally known to or readily ascertainable' by the public").

***Marketing strategies*.** The Complaint insufficiently alleges the protectable nature of any Asserted Secret related to "marketing strategies for fixed-odds daily fantasy sports

games." Compl. ¶ 28. Even at the pleading stage, the identification of "marketing strategies" is insufficiently particular to sustain a claim for trade secret misappropriation. It is difficult to envision a situation where a marketing plan[6] that has been employed and is not publicly available could possibly constitute a trade secret.

*Customer data.* As a preliminary matter, the Georgia Supreme Court has held that *customers are not trade secrets*, and knowledge on the part of the employee concerning the names and addresses of customers is *not* the property of the employer. *Avnet, Inc. v. Wyle Labs.*, 437 S.E.2d 302, 304 (Ga. 1993). Moreover, customer lists do not constitute a trade secret when the "information contained therein" is "readily ascertainable by proper means." *Leo Pubs., Inc. v. Reid*, 458 S.E.2d 651, 652 (Ga. 1995) (affirming denial of trade secret protection). Even if the identity of customers was protectable, the nature of PrizePicks' business does not lend itself to personally contacting customers – instead, PrizePicks advertises their service and customers independently create an account to participate in daily fantasy sports contests.

## 2. Vetnos Fails to Allege that the Asserted Secrets Are Undisclosed

The vague nature of Vetnos' allegations is underscored by the Complaint's failure to allege that the Asserted Secrets remain undisclosed and qualify as "secret." For

---

[6] Compl. ¶¶ 50-60 do not allege that Kerstein had access to any of the Asserted Secrets.

example, almost by definition, customers who use Vetnos' product know its details and "methods." *See Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1454 (11th Cir. 1991) (information not a trade secret where product is distributed in the public domain); *Medicrea USA, Inc. v. K2M Spine, Inc.*, 17 Civ. 8677 (AT), 2018 WL 3407702, at *13 (S.D.N.Y. Feb. 7, 2018) (holding that "sale of a product to a party not under any duty to maintain confidentiality . . . will destroy any expectation of secrecy as to that product and may place that product or information about how it works in the public domain"); *Am. Hearing Aid Assocs., Inc. v. GN Resound N. Am.*, 309 F. Supp. 2d 694, 706 (E.D. Pa. 2004) (holding that materials "readily available" on plaintiff's website "were available to the public" and "cannot be trade secrets"). Similarly, third-party "data sources" used in the Daily Fantasy Sports industry are not protectable trade secrets because, by their very nature, they are marketed and offered to the public. Likewise, marketing strategies cannot be protectable trade secrets because they must be disclosed to the public in order to be effective.

### 3. Vetnos Fails to Allege How the Asserted Secrets Derive Economic Value from Purported Secrecy.

Vetnos fails to allege how any of the vaguely identified Asserted Secrets "derive[] independent economic value from not being generally known or readily ascertainable." *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 854 (11th Cir. 2017). The Complaint's summary allegations fail to meet the pleading

standard, which requires dismissal. *See Pegasus Imaging Corp. v. Northrop Grumman Corp.*, No. 8:07-CV-1937-T-27EAJ, 2008 WL 5099691, at *4 (M.D. Fla. Nov. 25, 2008) (dismissing claim where complaint contained only conclusory allegations as to economic value and secrecy of alleged trade secrets).

### 4.  Vetnos Fails to Allege It Took Efforts to Protect the Secrecy of the Asserted Secrets

Finally, the Complaint fails to confirm that Vetnos properly protected the Asserted Secrets. The Complaint identifies a number of letters that were sent between counsel from Vetnos and PrizePicks. Compl. ¶¶ 78-80. In those letters, counsel for PrizePicks indicated that a number of Vetnos employees continued to e-mail Kerstein (on his personal e-mail address well after Vetnos terminated him) asking for advice or providing Kerstein with company information related to, for example, the selection of matchups, internal technical functionality of gameplay and settlements, odds, and rosters. Such communications, which are clearly not protected under any obligation of confidentiality, undercut Vetnos' trade secret misappropriation claims.

Notably, nowhere in the Complaint does Vetnos actually allege that Kerstein executed a non-disclosure agreement with Vetnos. Instead, the Complaint misleadingly alleges that "***GSN policy was to require*** all incoming employees (including Kerstein) to execute a Non-Disclosure, Proprietary Information, Invention Assignment and Non-Solicitation Agreement" (Compl. ¶ 51) (emphasis added). This allegation fails to allege

that Kerstein had any duty of non-disclosure as a result of Vetnos' efforts to protect the Asserted Secrets.

The Complaint thus fails to identify any protectable trade secrets with the requisite particularity, which alone requires dismissal of the DTSA and GTSA claims.

### C. The Complaint Fails To Allege Any Act of Misappropriation

The Complaint also fails to plead that PrizePicks misappropriated any Asserted Secrets through improper acquisition, disclosure, or use which, on its own, provides an independent ground to dismiss the trade secret claims. *See* 18 U.S.C. § 1839(5); O.C.G.A. § 10-1-761(2).

As an initial matter, Vetnos fails to allege misappropriation through improper acquisition because it has not alleged that Kerstein acquired the Asserted Secrets through "improper means," or even had access to any particular Asserted Secrets.[7] *See* 18 U.S.C. § 1839(6) (defining "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means"); O.C.G.A. § 10-1-761(1) (same). Importantly, the alleged "exfiltration," Compl. ¶ 58, involved only "confidential information," not the Asserted Secrets as defined at Compl. ¶ 28. Even so, Vetnos at most alleges that Kerstein sent purported "confidential information" to his personal email account *while he was an employee*. Compl. ¶ 58. This cannot constitute improper

---

[7] Compl. ¶¶ 50-60 do not allege that Kerstein had access to any of the Asserted Secrets.

acquisition of the Asserted Secrets because Kerstein was employed at Vetnos when it occurred. *See Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1346 (N.D. Ga. 2017) (concluding that an employee who emailed plaintiff's confidential information to his personal email account prior to resigning "did not acquire the information by improper means because he was authorized by Plaintiff to access [Plaintiff's] trade secrets"). Nor are allegations that Kerstein continues to possess the purported "confidential information," Compl. ¶ 62, sufficient to plead misappropriation by improper acquisition. *See AWP, Inc. v. Henry*, No. 1:20-cv-01625-SDG, 2020 WL 6876299, at *10 (N.D. Ga. Oct. 28, 2020) ("[T]he mere possession of a trade secret is not enough to state a claim of threatened misappropriation.").

And, once again, Vetnos fails to allege misappropriation through disclosure or use apart from the barest of conclusory allegations, which the Court need not accept as true. *See Iqbal*, 556 at 678. To adequately plead misappropriation through disclosure or use, a plaintiff must "show that the defendant (1) disclosed information that enabled a third party to learn the trade secret or (2) used a 'substantial portion' of the plaintiff's trade secret to create an improvement or modification that is 'substantially derived' from the plaintiff's trade secret." *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.,* 318 F.3d 1284, 1293 (11th Cir. 2003). The Complaint, however, merely alleged that "PrizePicks . . . used the [Asserted Secrets] through Kerstein," Compl. ¶ 69, and that, "[o]n information and belief, PrizePicks is using the" Asserted Secrets, Compl. ¶ 71. Such conclusory

allegations of misappropriation do not suffice. *See Argos USA LLC v. Young*, No. 1:18-CV-02797-ELR, 2019 WL 4125968, at *8 (N.D. Ga. June 28, 2019) (dismissing "conclusory allegations" that, "[o]n information and belief, Young and Southeast Ready Mix have used Argos' stolen and misappropriated information to compete with Argos. Southeast sells ready-mixed concrete that shares certain design characteristics with Argos' own proprietary mix designs and on information and belief, Young and Southeast used the information misappropriated from Argos to help develop and refine their own concrete mix designs"); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012) ("Honeywell does not allege any facts in support of the legal conclusion that Plaintiffs 'used and/or disclosed' and 'acquired and/or used' Honeywell's trade secrets or confidential information.").[8] Even these conclusory allegations of use are directed only to Vetnos' "methods for managing risk;" Vetnos fails to make any allegation, conclusory or otherwise, that PrizePicks used any other Asserted Secret. *See* Compl. ¶ 64-65, 69-74. Notably, any conclusory allegation that PrizePicks used any Asserted Secrets is rebutted by PrizePicks' employee agreements restricting employees from using trade secrets or confidential information from third parties – even hypothetically if Vetnos had protectable Asserted Secrets and Kerstein did improperly retain any

---

[8] The allegations of misappropriation evidenced by any alleged "similarity between the GSN product offering and the PrizePicks offering" and "the unusually high prizes offered by PrizePicks," Compl. ¶ 76, fails for this same reason.

Asserted Secrets, Kerstein was prohibited from disclosing them to PrizePicks. *See Putters v. Rmax Operating, LLC*, No. 1:13-CV-3382-TWT, 2014 WL 1466902, at *3 (N.D. Ga. Apr. 15, 2014) ("To state a plausible claim for relief, Rmax must do more than show that there is 'a sheer possibility that [Putters] has acted unlawfully.') (quoting *Iqbal*, 556 U.S. at 679). Accordingly, Vetnos' trade secret claims must fail and the Court should dismiss claims IV-V.

## IV.  <u>CONCLUSION</u>

As discussed above, the Court should dismiss the claims in Vetnos' Complaint in its entirety.

MORRIS, MANNING & MARTIN, LLP

*/s/Daniel Huynh*
Daniel Huynh
Georgia Bar No. 987369
Ashley N. Klein
Georgia Bar No. 579502
Rebecca K. Connolly (*pro hac vice* forthcoming)
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, GA 30326
Tel: (404) 233-7000
Fax: (404) 365-9532
dhuynh@mmmlaw.com
aklein@mmmlaw.com
rconnolly@mmmlaw.com

## **L.R. 5.1(C) CERTIFICATE OF COMPLIANCE**

Per L.R. 7.1(D), I certify that this pleading was prepared per L.R. 5.1(C) in

Times New Roman, 14 point type face.

*/s/Daniel Huynh*
Daniel Huynh
Georgia Bar No. 987369

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 5, 2023, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Georgia, Atlanta Division, using the CM/ECF system, which will send notification and a copy of this filing to all counsel of record.

*/s/ Daniel Huynh*
Daniel Huynh
