# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISON

**VETNOS, LLC,**

*Plaintiff*,

      **v.**

**SIDEPRIZE LLC d/b/a
PRIZEPICKS,**

*Defendant*.

**Civil Action No. 1:23-cv-2746**

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

## **TABLE OF CONTENTS**

I.   INTRODUCTION..................................................................................1

II.   THE PATENT INFRINGEMENT CLAIMS SHOULD BE DISMISSED.......1

   A.   Dependent Claims Cited by Plaintiff Do Not Affect the Analysis..........2

   B.   *Alice* Step One: The Claims Are Directed to an Abstract Idea ..............3

      1.   Plaintiff Fails to Distinguish Defendant's Case Law, Which Clearly Establishes that the Representative Claims are Directed to an Abstract Idea. ..................................................................................3

      2.   The Asserted Dependent Claims Are Similarly Directed to an Abstract Idea. ..................................................................................7

   C.   *Alice* Step Two: No Inventive Concept Sufficient to Transform the Asserted Patents Into Patent Eligible Subject Matter...........................10

III.   THE TRADE SECRET CLAIMS SHOULD BE DISMISSED.....................12

   A.   Plaintiff Does Not Allege Protectable Trade Secrets ...........................12

   B.   Plaintiff Cannot Defend Its Deficient Misappropriation Allegations....13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aatrix Software Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)................................................................2

*Agilysys, Inc. v. Hall*,
  258 F. Supp. 3d 1331 (N.D. Ga. 2017)..................................................14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*,
  573 U.S. 208 (U.S. 2008)........................................................... passim

*Angel Oak Mortg. Sols. LLC v. Mastronardi*,
  593 F. Supp. 3d 1234 (N.D. Ga. 2022)..................................................14

*Argos USA LLC v. Young*,
  No. 1:18-cv-02797, 2019 WL 4125968 (N.D. Ga. June 28, 2019) ....................15

*AWP, Inc. v. Henry*,
  No. 1:20-cv-01625-SDG, 2020 WL 6876299 (N.D. Ga. Oct. 28, 2020) ............14

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)...............................................................2

*Beteiro, LLC v. BetMGM, LLC*,
  626 F.Supp.3d 789 (D.N.J. 2022) .........................................................11

*Bilski v. Kappos*,
  561 U.S. 593 (2010)..............................................................................4

*Contract Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)...............................................................2

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011)...............................................................6

*DynCorp Int'l v. AAR Airlift Grp., Inc.*,
  664 F. App'x 844 (11th Cir. 2016) .......................................................12

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)............................................... 5, 9, 10

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)..........................................................3, 4

*Everglades Game Tech., LLC v. Supercell, Inc.*,
  No. 14-643-GMS, 2015 WL 4999654 (D. Del. Aug. 21, 2015)..........................9

iii

*Impax Labs., Inc. v. Aventis Pharm., Inc.*,
  545 F.3d 1312 (Fed. Cir. 2008)...............................................................1

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2007)...........................................................1, 11

*In re Smith*,
  815 F.3d 816 (Fed. Cir. 2016)...........................................................4, 11

*Integrated Tech. Sols., LLC v. iRacing.com Motorsport Simulations, LLC*,
  630 F. Supp. 3d 276 (D. Mass. 2022) ....................................................4

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015)................................................... 4, 6, 9

*Planet Bingo, LLC v. VKGS, LLC*,
  576 Fed. Appx. 1005 (Fed. Cir. 2014)....................................................6

*Putters v. Rmax Operating, LLC*,
  No. 1:13-CV-3382-TWT, 2014 WL 1466902 (N.D. Ga. Apr. 15, 2014) ..........14

*Savvy Dog Sys., LLC v. PA. Coin, LLC*,
  No. 3:19-cv-01470, 2020 WL 1550676 (M.D. Pa. Apr. 1, 2020) ......................11

*Skillz Platform Inc. v. Aviagames Inc.*,
  No. 21-cv-02436-BLF, 2022 WL 783338 (N.D. Cal. March 14, 2022)..........5, 10

*SRI Int'l., Inc. v. Cisco Sys., Inc.*,
  930 F.3d 1295 (Fed. Cir. 2019)................................................. 3, 7, 10

**Statutes**

18 U.S.C. § 1839(5) ................................................................................13

O.C.G.A. § 10-1-761(2) .........................................................................13

I. **INTRODUCTION**

Plaintiff's Opposition reads like a desperate attempt to argue novelty instead of responding to Defendant's motion asserting that the Asserted Patents are invalid as they recite a patent-ineligible abstract idea. This is a fundamental error. First, novelty arguments, especially non-meritorious ones, are irrelevant to a § 101 analysis. *See In re Bilski*, 545 F.3d 943, 958 (Fed. Cir. 2007) ("First, the Court has held that whether a claimed process is novel or non-obvious is irrelevant to the § 101 analysis. Rather, such considerations are governed by 35 U.S.C. § 102 (novelty) and § 103 (non-obviousness)") (internal citations omitted). Second, Plaintiff's characterization of its alleged invention is divorced from what is actually claimed by the Asserted Patents. Plaintiff's Opposition likewise fails to address its insufficient pleadings of its trade secret misappropriation claims.  Accordingly, this Court should grant Defendant's motion and dismiss all claims with prejudice.

II. **THE PATENT INFRINGEMENT CLAIMS SHOULD BE DISMISSED**

Dismissal is appropriate because no factual dispute[1] prevents this Court from holding that the Asserted Patents are directed to an abstract idea and lack an

---

[1] Contrary to Plaintiff's assertion, the "clear and convincing" evidence standard applying to factual assertions offered in support of Section 101 arguments is no heavier here, where Defendant's arguments do not offer any prior art previously considered during patent prosecution in support of its validity challenge.  *Cf. Impax Labs., Inc. v. Aventis Pharm., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) ("When the examiner considered the asserted prior art and basis for validity challenge during patent prosecution, that burden becomes particularly heavy." (emphasis added)).

inventive concept that transforms the claimed abstract idea into a patent-eligible application. *Aatrix Software Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018); *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 573 U.S. 208, 221 (U.S. 2008).

## A. Dependent Claims Cited by Plaintiff Do Not Affect the Analysis

Notably, Plaintiff's Complaint alleges that Claim 1 of each Asserted Patent is a "Representative Claim" for the purposes of its infringement allegations. Compl. ¶¶ 101, 120, 139. Now, in contrast, Plaintiff argues without any justification that these same claims are not representative for the purposes of a §101 analysis.[2] Opp. at 11. However, a court may treat a claim as representative when, as here, all other claims are substantially similar and linked to the abstract idea. *See Contract Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see also Berkheimer*, 881 F.3d at 1365.

Despite Plaintiff's conflicting arguments, Defendant nonetheless addresses below Plaintiff's § 101 arguments regarding the dependent claims.[3] None of the

---

[2] Plaintiff does not dispute the appropriateness of considering the Asserted Patents collectively. Indeed, Plaintiff's Opposition cites only to the 543 Patent specifically or Asserted Patents collectively. *See, e.g.*, Opp. at 3, 7-10, 16-18.

[3] Plaintiff's eligibility arguments address only the following dependent claim: Claims 15 and 16 (Opp. at 8), Claims 7, 9, 10, and 11 (Opp. at 8), and Claims 4, 13, 14, and 17 (Opp. at 10) (collectively, the "Asserted Dependent Claims"). Therefore, at the very least, the Court should treat Claim 1 of each Asserted Patent as representative of Claims 2, 3, 5, 6, 8, 12, and 18. *See Berkheimer*, 881 F.3d at 1365. An updated version of the chart comparing the claim language, attached to Defendant's Motion to Dismiss as Exhibit A, is attached hereto as Exhibit A.

Asserted Dependent Claims are directed to a non-abstract idea or contain a sufficiently inventive concept as required for patent eligibility.

## B. *Alice* Step One: The Claims Are Directed to an Abstract Idea

Unsurprisingly, Plaintiff largely ignores Defendant's citations to Federal Circuit case law and skirts Defendant's arguments establishing that the Representative Claims are directed to an abstract idea. Plaintiff instead responds that <u>some</u> of the claims, the Asserted Dependent Claims, are not directed to abstract ideas because they provide technical solutions to technical problems. However, even then, Plaintiff fails to identify <u>any</u> element providing a <u>technical</u> solution to a <u>technical</u> problem. As a matter of law, the Asserted Dependent Claims are directed to an abstract idea and merely invoke generic computer functions as tools to accomplish the same. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-336 (Fed. Cir. 2016); *SRI Int'l., Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303-04 (Fed. Cir. 2019).

### 1. Plaintiff Fails to Distinguish Defendant's Case Law, Which Clearly Establishes that the Representative Claims are Directed to an Abstract Idea.

The Asserted Patents are directed to the abstract idea of collecting, analyzing, and presenting data. Plaintiff's attempt to limit any claims to skills-based fantasy-type contests does not cure this critical flaw. Further, Plaintiff does not address the cases cited by Defendant because it cannot cite any case holding that a patent claiming methods or systems for managing and/or operating a game or contest is not

directed to an abstract idea at Step One. *See Integrated Tech. Sols., LLC v. iRacing.com Motorsport Simulations, LLC*, 630 F. Supp. 3d 276, 284 (D. Mass. 2022) (citing *Enfish,* 822 F.3d at 1334). Finally, Plaintiff's contention that the claims involve monitoring a vast set of variables and identifying millions of matchups is inaccurate and irrelevant.

*First*, Plaintiff's argument that the Asserted Patents are distinguishable from similar claims held to be directed to abstract ideas because the Asserted Patents are directed to a computer-based fixed-odds game is inconsistent with the Federal Circuit's precedent. For example, in *In re Smith*, the Federal Circuit held that the rules for conducting a game were directed to an abstract idea, comparing the claimed method to other "fundamental economic practices" totally distinct from gaming. *See* 815 F.3d 816, 818-19 (Fed. Cir. 2016) (citing *Alice*, 573 U.S. at 220 (exchanging financial obligations); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (hedging risk); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (offer-based price optimization)).[4] Further, the Federal Circuit is clear that claims directed to collecting, analyzing, and presenting data are within the realm of abstract ideas, regardless of whether they are limited to a particular context. *See Elec. Power Grp.,*

---

[4] Plaintiff's Opposition misquotes Defendant's brief in support of its Motion to Dismiss ("Br."). *See* Opp. at 13. Defendant clearly stated that although the difference between "wagering games based on probability" and "skill-based fantasy-type gaming contests" "is a meaningful distinction in other contexts, it does not affect the Section 101 analysis here." Br. at 6 n4.

*LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("Most obviously, limiting the claims to the particular technological environment of power-grid monitoring is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core.").

*Second*, Plaintiff does not cite any case holding that methods or systems for managing and/or operating a game or contest are not directed to an abstract idea at Step One.[5] Opp. at 12. Instead, Plaintiff merely notes that the Federal Circuit has contemplated that patents directed to games and/or contests *could* survive Step Two if they included an "inventive concept." Opp. at 12-13. As discussed below, no inventive concept exists here.

*Third*, Plaintiff argues that a human mind could not perform the claimed process because of the amount of data to be monitored — not because of the nature of the data or the steps required to be taken. In particular, Plaintiff argues that "it is simply not possible for the human mind to continuously monitor and analyze the number of variables introduced by a computer-based fantasy sports offering in real time and provide near-instantaneous recognition given the significant, ever-

---

[5]  The court held that the claims in *Skillz Platform Inc. v. Aviagames Inc.* did not recite a method for "managing a claim," but instead recited a method for (1) receiving a stream of pseudo-random number seeds; (2) receiving game data from the game server; (3) generating a plurality of pseudo-random numbers using the stream of pseudorandom number seeds; and (4) executing the game instance using the plurality of pseudo-random numbers." No. 21-cv-02436-BLF, 2022 WL 783338, at *9 (N.D. Cal. March 14, 2022).

changing variables that can affect the game operator's risk." Opp. at 12. However, reliance on a generic computer to more quickly collect, organize, and analyze data is insufficient to render a claim patent-eligible. *See OIP Techs.*, 788 F.3d at 1363.

Regardless, the Asserted Patents themselves do not actually require monitoring "millions of matchups" or a vast data set beyond the scope of human capability, as Plaintiff claims. Opp. at 7-9; *see also Planet Bingo, LLC v. VKGS, LLC* 576 Fed. Appx. 1005, 1008 (Fed. Cir. 2014). In *Planet Bingo*, the Federal Circuit rejected a similar argument that the claimed invention could not be carried out manually because, "in real world use, literally thousands, if not millions of preselected Bingo numbers are handled by the claimed computer program," where the asserted claims themselves merely required "two sets of Bingo numbers, a player, and a manager." *Id.* (internal citations and quotations omitted); *see also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011). Here, none of the Asserted Patents' claims necessarily require monitoring such a vast data set or identifying millions of matchups.

Moreover, Plaintiff's reliance on *SRI* is inapposite since nothing about the nature of the data to be collected, analyzed, and displayed under the Asserted Patents prevents a human from manually carrying out the claimed method. In *SRI*, the asserted claims were directed to using a specific technique (a plurality of network monitors that each analyzes specific types of data in the network and integrates

reports from the monitors) to solve a technological problem arising in computer networks (identifying hackers or potential intruders into the network). 930 F.3d at 1304. There, the Federal Circuit agreed "that the human mind is not equipped to detect suspicious activity by using network monitors and analyzing network packets as recited by the claims." *Id.* Yet here, the data at issue merely represents historical statistics reflecting an athlete's performance. *See* Br. at 5-9; 543 Patent at 37:44-63 (reciting a process that collects information (by receiving schedule data and accessing athlete information from external sources), analyzes it (by determining which athletes are expected to compete and ranking them by historical fantasy point performance values) and displays the decision (by displaying the athletes by their ranking)); Opp. at 10 (alleging that Asserted Patents recite method for monitoring data such as "injuries/substitutions, game cancellations, weather changes, unbalanced selections or payout potentials, and so forth).

### 2. The Asserted Dependent Claims Are Similarly Directed to an Abstract Idea.

Plaintiff attempts to salvage the Asserted Patents by asserting that they recite a technical solution to a technical problem. For the reasons discussed below, the problems identified by Plaintiff are not rooted in the realm of computers or technical in nature. Moreover, the alleged solutions to these problems merely use generic computers as tools rather than improve any technological functionality.

The "first set of technical problems" that Plaintiff identifies involves "accurately and efficiently identifying, from among millions of matchup combinations, those that have an equal likelihood of occurring." Opp. at 7. However, the risk that an operator may mistakenly select an unbalanced matchup is not a "technical problem" but an industry-specific problem arising from the inherent risk of a fixed-odds format. Plaintiff's allegation that "traditional pari-mutuel formats need not predict the outcome of the contest and does not bear the risk associated with this outcome" emphasizes that this problem is rooted in the contest format, not the functionality of any computer network or component. *See* Opp. at 7.

The second set of "technical problems" identified by Plaintiff "involve continually monitoring, in real-time, remote electronic data sources to ensure that various ever-changing variables associated with the matchups selected by game operators do not impact the balance and viability of these matchups." Opp. at 8. Plaintiff argues that the "computer-based nature of [its] new game" make this risk even more time-sensitive. However, just like the first alleged "technical problem," this issue is not rooted in computer technology. To the contrary, Plaintiff acknowledges that the "unexpected changes" to variables that "may expose the game operator to unnecessary risk" arise from "injuries, substitutions, game cancellations, weather changes, unbalanced player selections and payout potentials, and the like," rather than any technological limitation. Opp. at 9.

8

Regardless, the Asserted Patents do not recite any solutions to these "problems" that improve the existing functionality of computers or networks.[6] Plaintiff concedes that "the Asserted Patents claim computer-based tools that continually monitor, 'in real time,' data from remote 'electronic information sources'" and "computer-based tools that dynamically generate, in real-time, graphical or auditory alerts." Opp. at 10. However, using computer technology to monitor matchups in real time and exert greater control over the contest is not tantamount to a technical solution. *See Everglades Game Tech., LLC v. Supercell, Inc.*, No. 14-643-GMS, 2015 WL 4999654, at *5 (D. Del. Aug. 21, 2015) (citing *OIP Techs.*, 788 F.3d at 1363 ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible.")). Instead, this alleged solution is simply a process of receiving, analyzing, and presenting data. *See Elec. Power*, 830 F.3d 1350.

The purported "improvement" alleged by Plaintiff is not a technological improvement that has been held by courts to transform claims into patent eligible subject matter. For example, the claims at issue in *Skillz Platform* recite specific steps for setting up common randomized gameplay in a network computing

---

[6] Notably, the Asserted Patents fail to present <u>any</u> solution, technical or otherwise, to the problem of identifying 50:50 matchups. *See* Opp at 7. Although the Asserted Patents' claims describe a "ranking process," they don't set forth any method to use the rankings to identify 50:50 matchups. *See* 543 Patent, cls. 7-11. Indeed, the Asserted Patents specify that a human matchmaker, not any technical invention, assigns the matchups using an undisclosed method. *Id.*, cl. 11; 8:1-4.

environment, improving the functionality of computer networks used for gaming by specifically reciting a process to provide common gameplay to different users to "level the playing field" for a game of skill. 2022 WL 783338, at *10. Similarly, in *SRI*, the Federal Circuit held that claims directed to using a plurality of network monitors that analyze specific types of data on the network and integrating reports from the monitors to identify hackers or potential intruders into the network were an improvement in computer network technology that was fundamentally different from the patent-ineligible claims at issue in *Electric Power,* which were merely drawn to using computers as tools to solve a power grid problem. *Compare* 930 F.3d at 1303-04, *with Elec. Power*, 830 F.3d at 1354.

The Asserted Patents are similar to those at issue in *Electric Power*, not the claims in *SRI*, because they are directed to the use of generic computers as tools to collect and analyze data to solve problems inherent to the fixed-odds format, not to any improvement of the technology itself. *Elec. Power*, 830 F.3d at 1354. Therefore, Plaintiff cannot plausibly allege that the Asserted Patents provide any technical solution to any problem rooted in computer technology.

### C. *Alice* Step Two: No Inventive Concept Sufficient to Transform the Asserted Patents Into Patent Eligible Subject Matter

Plaintiff fails to identify an "inventive concept" in the Asserted Patents to survive Step Two. An inventive concept sufficient to transform claims directed at abstract ideas into a patent-eligible invention cannot come from just applying the

abstract idea to a technical context. *Alice*, 573 U.S. at 221.

Here, Plaintiff argues that the alleged "inventive concept" is the use of a fixed-odds format, noting that similar contests had previously been burdened with a pari-mutuel format. Opp. at 16-17 (§ III.c.i). As discussed above, use of a fixed-odds format is a fundamental economic practice clearly established to be ineligible for patent protection. *See, e.g., Smith*, 815 F.3d at 818-19. Notably, Plaintiff's arguments under Step One do not claim otherwise. Because the use of fixed-odds is an abstract idea, it cannot also be an inventive concept sufficient to transform the nature of the claimed invention. *Alice*, 573 U.S. at 224.

Plaintiff claims that "the Complaint, the Asserted Patents, and the PTO's findings present plausible factual evidence of novely sufficient to preclude a rulings under Section 101 at the pleadings stage." Opp. at 18. At the outset, novelty is irrelevant to Section 101. *Bilski*, 545 F.3d at 958. Additionally, a patent examiner's statements are not evidence of a patent's validity, nor must the court afford weight to prosecution histories in the analysis of patent eligibility at the motion to dismiss stage. *See Beteiro, LLC v. BetMGM, LLC*, 626 F.Supp.3d 789, 803 (D.N.J. 2022). Regardless, Plaintiff's reliance on *Savvy Dog Systems, LLC v. Pennsylvania Coin, LLC*, to demonstrate a factual dispute precluding dismissal is misplaced, since those parties disputed if claimed elements of firmware functionally improved the well-understood, routine, and conventional technology used in the industry. No. 3:19-cv-

01470, 2020 WL 1550676, at *7 (M.D. Pa. Apr. 1, 2020). In contrast, Plaintiff does not plausibly allege that the Asserted Patents contain an "inventive concept" improving pre-existing technology. As discussed above, Plaintiff's allegedly novel fixed-odds format, which does not improve any computer functionality, is directed to an abstract idea and, as a matter of law, is not an "inventive concept." *Alice*, 573 U.S. at 224. Therefore, because the Asserted Patents are directed to abstract ideas and lack any inventive concept as a matter of law, Counts I-III should be dismissed.

III.   **THE TRADE SECRET CLAIMS SHOULD BE DISMISSED**

   **A. Plaintiff Does Not Allege Protectable Trade Secrets**

Plaintiff fails to rehabilitate its conclusory allegations as to the existence of protectable trade secrets. Plaintiff's allegations do not provide the requisite notice regarding what alleged trade secret matters are at issue and do not tell the Court what Plaintiff purportedly seeks to protect.[7]

In contrast, the Complaint sets forth four generic categories of alleged trade secrets: methods for managing risk, techniques for producing daily 50/50 matchups, marketing strategies, and customer data. *See* Compl. ¶ 28. Plaintiff's assertion that "[t]he Vetnos Trade Secrets include nonpublic technology enabling daily fantasy

---

[7] While alleged trade secrets need not be identified with as much particularity at the pleading stage as before merits discovery, Vetnos must still "allege sufficient facts to plausibly show a trade secret was involved." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016). Vetnos's mischaracterization of its claims in the Opposition illustrates its failure to sufficiently plead its claims in the Complaint.

sports game with fixed-odds-payout-structure" (Opp. at 20 (citing Compl. ¶¶ 11-13)) was not plead in the Complaint, and still fails to sufficiently place Defendant on notice of the purported trade secrets it seeks to protect.

Instead of arguing that it has sufficiently plead the trade secrets alleged at Compl. ¶ 28, Plaintiff cites a string of cases simply illustrating that the Court has in fact denied motions to dismiss trade secret claims. *See* Opp. at 21. However, Plaintiff fails to explain how these cases support each of the broad categories of trade secrets alleged at Compl. ¶ 28. By alleging generic categories of information without any specific details delineating its trade secrets, Plaintiff attempts to use this litigation as a fishing expedition allowing it to use hindsight after discovery has commenced to identify its purported trade secrets. This is improper and contrary to the pleading standard for trade secret misappropriation cases.

### B. Plaintiff Cannot Defend Its Deficient Misappropriation Allegations

Even assuming that the Complaint sets forth sufficient allegations of protectable trade secrets, the Complaint fails to allege misappropriation through improper acquisition, disclosure, or use, which provides independent grounds to dismiss the trade secret claims. *See* 18 U.S.C. § 1839(5); O.C.G.A. § 10-1-761(2).

The crux of Plaintiff's misappropriation claims hinges on Kerstein's alleged "exfiltration" of confidential information. Namely, Plaintiff asserts that "Defendant improperly *acquired* the Vetnos Trade Secrets because it 'acquired … the Trade

Secrets through Kerstein.'" Opp. at 24 (citing Compl. ¶ 69). Plaintiff, however, glosses over its own allegation that Kerstein's disclosure of the purported trade secrets took place "***in the months prior to the end of his employment.***" Comp. ¶ 58 (emphasis added). This Court has routinely held that an employee who emailed plaintiff's confidential information to his personal email account prior to resigning "did not acquire the information by improper means because he was authorized by Plaintiff to access [Plaintiff's] trade secrets" during his term of employment.[8] *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1346 (N.D. Ga. 2017); *see also Angel Oak Mortg. Sols. LLC v. Mastronardi*, 593 F. Supp. 3d 1234, 1244-45 (N.D. Ga. 2022) (defendant did not misappropriate trade secrets by "simply [sending] *himself* information to which he already had access as plaintiff's Inside Account Executive"); *Putters v. Rmax Operating, LLC*, No. 1:13-CV-3382-TWT, 2014 WL 1466902, at *3 (N.D. Ga. Apr. 15, 2014) (dismissing trade secret claims when plaintiff never alleged that defendant gained knowledge of any new trade secrets following his resignation). Moreover, allegations that Kerstein continues to possess the purported trade secrets are insufficient to plead misappropriation by improper acquisition. *See AWP, Inc. v. Henry*, No. 1:20-cv-01625-SDG, 2020 WL 6876299, at *10 (N.D. Ga.

---

[8] Misappropriation of trade secrets claims cannot hinge on the conclusory allegation that a former employee's exposure to confidential information states a plausible claim for relief. This Court recognizes the exposure this would leave on any employee that leaves a company for a different job – "all because that employee had previously been exposed to confidential information." *Putters*, 2014 WL 1466902, at *3.

Oct. 28, 2020) ("[T]he mere possession of a trade secret is not enough to state a claim of threatened misappropriation.").

Plaintiff then asserts without any support that Defendant "used the Vetnos Trade Secrets to develop a competing product, despite knowing Kerstein owed GSN/Vetnos a duty to maintain the confidentiality of the Vetnos Trade Secrets."[9] Opp. at 25. However, parroting the element's language is insufficient, especially where Plaintiff fails to identify any features that Defendant allegedly copied. Even taking these allegations as true (and they are not), launching a "competing product" is not equivalent to, or even indicative of, misappropriation where there is no allegation that any similarity between the products is confidential, much less trade secret, or that such features could only be borne from misappropriation. Plaintiff's allegations are analogous to the allegations in *Argos USA LLC v. Young*, where the court held inadequate blanket assertions that defendants "used … stolen and misappropriated information to compete" based only on the fact that the defendant's product "shares certain design characteristics with [plaintiff's] own proprietary mix designs." No. 1:18-cv-02797, 2019 WL 4125968, at *8 (N.D. Ga. June 28, 2019).

For these reasons, Plaintiff has failed to state a claim upon which relief can be granted as to misappropriation of trade secrets, and these claims must be dismissed.

---

[9] Kerstein did not execute an NDA while employed by Vetnos, which further belies any claim that Vetnos took sufficient steps to protect its alleged trade secrets.

MORRIS, MANNING & MARTIN, LLP

*/s/ Daniel Huynh*
Daniel Huynh
Georgia Bar No. 987369
Ashley N. Klein
Georgia Bar No. 579502
Rebecca K. Connolly
(*pro hac vice* forthcoming)
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, GA  30326
Tel:  (404) 233-7000
Fax:  (404) 365-9532
dhuynh@mmmlaw.com
aklein@mmmlaw.com
rconnolly@mmmlaw.com

## **L.R. 5.1(C) CERTIFICATE OF COMPLIANCE**

Per L.R. 7.1(D), I certify that this pleading was prepared per L.R. 5.1(C) in

Times New Roman, 14 point type face.

*/s/ Daniel Huynh*

Daniel Huynh
Georgia Bar No. 987369

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2023, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Georgia, Atlanta Division, using the CM/ECF system, which will send notification and a copy of this filing to all counsel of record.

*/s/ Daniel Huynh*
Daniel Huynh