THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VETNOS, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>SIDEPRIZE LLC d/b/a PRIZEPICKS,<br><br>   Defendant. | CIVIL ACTION FILE NO:<br><br>1:23-cv-02746-WMR<br>1:24-cv-05568-WMR |

## ORDER

This matter comes before the Court on the Special Master's Report and Recommendation ("R&R"). [Doc. 83].[1] In the R&R, the Special Master recommends that the Motion to Dismiss Count IV of the Complaint [Doc. 66] be granted. Plaintiff Vetnos, LLC ("Vetnos") filed its objections to the R&R [Doc. 85], and Defendant Sideprize LLC d/b/a PrizePicks ("PrizePicks") responded to those objections. [Doc. 88]. Upon review, the Court agrees with the Special Master and adopts the R&R as the opinion of the Court.

**I. BACKGROUND**

Vetnos and PrizePicks are fantasy sports companies. Vetnos portrays its

---

[1] Unless otherwise noted, all docket cites in this Order refer to entries in case number 1:23-cv-02746-WMR.

1

technology as an innovativation that facilitates fixed-odd daily fantasy sports games, which may, for example, "present a series of 'matchups' to a fan, such as whether a particular athlete will score over or under a certain number of points in an upcoming game." [Doc. 1 ¶ 11]. Or, Vetnos's technology can facilitate a fantasy game in which the user selects whether Tom Brady or Ben Roethlisberger will score more fantasy points in their upcoming matchups. ['718 Patent, Figure 3]. Vetnos brought two lawsuits against PrizePicks—suits which have since been consolidated—to protect its fantasy sports technology.

PrizePick's current Motion to Dismiss asks the Court to dismiss Vetnos's patent infringement claim based on Patent No. 11,977,718 ("'718 Patent"). [1:24-cv-5568; Doc. 1 ¶¶ 108–29] ("Count IV"). Claim 1 of the '718 Patent, which the parties seemingly agree is representative of the remaining patent claims, states:

1. A method comprising:

    accessing, by at least one activity server, in real-time from one or more data sources, information associated with a plurality of matchups in a skill-based game, each matchup comprising at least two matchup components associated with at least one participant within a plurality of participants in at least one real-world event, the at least two matchups components being selected so as to produce, based at least in part on at least one projected performance score of the at least one participant, outcomes that are

generally equally weighted within the skill-based game and are, as a result, equally probable to occur;

determining, by the at least one activity server, for at least one matchup in the plurality of matchups, and based on an analysis of the accessed information, that at least one matchup feature associated with the at least one matchup is unevenly skewed relative to an established baseline due to deviating from the established baseline by more than a threshold amount;

transmitting, by the at least one activity server for display within a matchup tool interface of at least one game operator computing device of at least one game operator, the at least one matchup, wherein the matchup tool interface enables the at least one game operator to interactively select the at least one matchup for removal from the skill-based game;

receiving, by the at least one activity server, an indication that the game operator has selected the at least one matchup for removal from the skill-based game; and

removing, by the at least one activity server, in real time and in response to the received indication, the at least one matchup from the skill-based game, such that the selected matchup is no longer available for selection in the skill-based game.

[Doc. 83 at 4]; ['718 Patent, 37:62–38:30].[2]

PrizePicks moved to dismiss Vetnos's claims based on the '718 Patent, arguing the claims in that patent are ineligible for patent protection under 35 U.S.C. § 101. That code section defines patentable inventions by stating, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. PrizePicks contended this patent sought to protect patent-ineligible "abstract ideas." [Doc. 66-1 at 2] (citing *Alice Corp. v. CLS Bank Int'l,* 573 U.S. 208, 220–21 (2014)). PrizePicks characterized the '718 Patent as being "directed to assessing/mitigating risk in a game by obtaining, analyzing, and displaying data[,]" rather than any patentable matter. [*Id.* at 7].

The Special Master agreed with PrizePicks and now recommends that claims based on the '718 Patent be dismissed with prejudice. [Doc. 83 at 18]. The Special Master undertook a two-step analysis to determine whether the patent was a patent-ineligble abstract idea. [*Id.* at 10–18]. At step one, courts "must first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573

---

[2] PrizePicks treated Claim 1 as representative of the '718 Patent's remaining claims in their Motion to Dismiss, as did the Special Master at the hearing on that motion. [Doc. 66-1 at 9–10]; [Doc. 83 at 15, 39]. Vetnos has not objected to treating Claim 1 as a representative claim, meaning the Court, like the Special Master, will treat Claim 1 as a representative claim. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024).

4

U.S. at 218. At step two, which is reached only if the at-issue claims are directed to an abstract idea, courts "determine whether [the claim] contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 221. Like PrizePicks had argued, the Special Master found that "the basic character of the '718 Patent claims [is] evaluating risk and displaying data." [Doc. 83 at 12]. So, for step one, the Special Master cited numerous decisions from the Federal Circuit to support the conclusion that assessing risk, displaying data, or a combinatino thereof are abstract ideas. [*Id.* at 13–14] (citing *Bilski v. Kappos*, 561 U.S. 593, 611 (2010); *Alice*, 573 U.S. at 219, 221; *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016); *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368 (Fed. Cir. 2024)). For step two, the Special Master found the language of the '718 Patent claims did not incorporate "game structures described in the specification" such that the claims contained an inventive concept that could be patentable. [*Id.* at 16–18].

Vetnos timely objected to the Special Master's R&R, and PrizePicks responded to those objections. The matter is now ripe for review.

## II.   LEGAL STANDARD

### a. Review of Special Master's R&R

When parties file objections to a Special Master's conclusions of fact or conclusions of law, the Court must "decide de novo all objections . . . ." Fed. R. Civ. P. 53(f)(3)–(4). When no objections are filed, the Court will review the Special Master's findings for clear error. *See Martin v. Univ. of S. Ala.*, 911 F.2d 604, 608 (11th Cir. 1990) ("[T]he findings of fact made by a Special Master must be accepted by the district court unless clearly erroneous."); *see also Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (discussing review of a magistrate's R&R and observing "[i]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation"). Applying these standards, the Court may "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

### b. Motion to Dismiss

Patent eligibility under 35 U.S.C. § 101 can be determined at the motion-to-dismiss stage. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). As always, the Rule 12(b)(6) standard provides that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

6

*Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausible factual allegations may preclude dismissing a case under § 101 where, for example, "nothing on th[e] record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6)." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016). Thus, at the motion-to-dismiss stage, courts may consider "the complaint, the patent, and materials subject to judicial notice." *Aatrix*, 882 F.3d at 1128.

### III.  ANALYSIS

Vetnos's objections to the R&R can be placed into two main categories. First, Vetnos contends the Special Master failed to draw all inferences from the intrinsic record, i.e., the Complaint and prosecution history, in its favor. These objections are presented as overarching objections and then are reasserted as reasons that the Special Master erred at *Alice*'s second step. Second, Vetnos highlights specific language within the claims of the '718 Patent that Vetnos contends render the claimed invention patent eligible at *Alice*'s first step. The Court addresses each category in turn.

#### a.  *The Intrinsic Record*

Vetnos's contention that the allegations of the Complaint plausibly allege the '718 Patent claims describe an inventive concept rather than an abstract idea is unavailing. Vetnos cites various paragraphs of the Complaint, but none of these

7

paragraphs say anything specific about the '718 Patent. [Doc. 85 at 11] (citing paragraphs 5, 9–13, 15, 17 of the Complaint). For example, one of these paragraphs says Vetnos "developed technology that powers new games of skill that keep casual sports fans engaged through a long season, enable fans to participate with minimal time investment, and allow fantasy sports operators to provide competitive, fixed prizes with managed risk." [1:24-cv-05568; Doc. 1 ¶ 9]. Or another paragraph says Vetnos "developed tools and technology for providing daily fantasy sports games that employ the fixed-odds structure for fan selectable matchups described herein." [1:24-cv-05568; Doc. 1 ¶ 12]. While these paragraphs may allege Vetnos has developed a patent eligible technology or product as a general matter, nothing in the paragraphs cited alleges how the '718 Patent qualifies for protection under 35 U.S.C. § 101. In fact, many of the paragraphs Vetnos cites are also contained in the Complaint for the first-filed lawsuit, which does not relate to the '718 Patent at all. [Doc. 1 ¶¶ 9, 13]. "[A]llegations in the complaint regarding the claims" may prevent dismissal, but Vetnos's allegations here are too generalized to plausibly suggest the '718 patent relates to a patent eligible matter. *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 133 (Fed. Cir. 2022). The Special Master did not err by failing to consider the allegations of the Complaint cited by Vetnos.

The Special Master did not err by discrediting the patent examiner's conclusion that the claims, as amended, satisfied the *Alice* framework. Vetnos

correctly notes that a patent is "presumed valid . . . and this presumption is based in part on the expertise of patent examiners[, who are] presumed to have done their job." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574 (Fed. Cir. 1992). But, the Special Master evaluated and rejected the examiner's conclusion that the '718 Patent was directed to patent eligible matter. [Doc. 83 at 16]. Additionally, the Special Master found that PrizePicks had "established by clear and convincing evidence that the claims of the '718 Patent directed to patent-ineligible subject matter." [*Id.* at 2]. That is sufficient to overcome the presumption of validity that Vetnos invokes, and the Special Master and this Court "are not required to defer to Patent Office determinations as to eligibility." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023); *e-Numerate Sols., Inc. v. United States*, 149 Fed. Cl. 563, 579 (2020) ("[A]n issued patent enjoys the presumption of validity which requires clear and convincing evidence to prove otherwise . . . ." (quotations omitted)). Vetnos's claims that the intrinsic record has not been duly considered lack merit.

    b. *Alice Step One and Specific Language of the '718 Patent*

The Court agrees with the Special Master's conclusion that the '718 Patent is directed to "evaluating risk and displaying data." [Doc. 83 at 12]. And, both evaluating risk and displaying data are patent ineligble ideas. *Alice*, 573 U.S. at 220–21 (describing risk hedging as an abstract fundamental economic practice); *AI*

9

*Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024) ("We have explained that the steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts."). Therefore, as an initial matter, the Court agrees that the '718 Patent's combination of these two abstract ideas seeks to protect patent ineligible matter. The language Vetnos asks the Court to focus on does not change that conclusion.

First, Vetnos highlights Claim 1's language that says accessed matchup components are "selected so as to produce, based at least in part on at least one projected performance score of the at least one participant, outcomes that are generally equally weighted within the skill-based game and are, as a result, equally probable to occur . . . ." [Doc. 85 at 17–19]. But, the Court thinks this language "merely describes an 'effect or result dissociated from any method by which [it] is accomplished[,]'" which often indicates the claim is directed to patent-ineligible matter. *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022) (quoting *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016)). Rather than relate to how projected performance scores are calculated or how possible outcomes are weighted, the claims of the '718 Patent relate to the access and display of matchups created through a process not claimed in the '718 Patent. This language is insufficient for the Court to reject the Special Master's conclusions.

Second, Vetnos highlights language in Claim 1 that states the tasks desribed

10

occur in the context of a "skill-based game." [Doc. 85 at 19–20]. But, the Special Master convincingly found that "[t]he fact that a patent limits a conventional business practice to a particular subset of possible applications does not alter its character as an abstract idea." [Doc. 83 at 15]; *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."). The Court agrees. To the extent the '718 Patent is directed to accessing, manipulating, and displaying data, the fact those processes take place in the "skill-based game" context is of little import. This language provides no basis to find the Special Master erred.

Finally, Vetnos highlights the concluding clause of Claim 1, which states: "removing, by the at least one activity server, in real time and in response to the received indication, the at least one matchup from the skill-based game, such that the selected matchup is no longer available for selection in the skill-based game." [Doc. 85 at 20–21]. Still, this language really relates to the manipulation and display of data, which will generally be abstract. *AI Visualize*, 97 F.4th at 1378. The Special Master's conclusions are not undermined by this language.

In summary, none of Vetnos's objections cause the Court to disagree with the Special Master's recommendation that the infringement claim based on the '718

Patent should be dismissed.

## IV.   CONCLUSION

The Special Master's R&R [Doc. 83] is **ADOPTED** as the Opinion of the Court. Accordingly, the Motion to Dismiss [Doc. 66] is **GRANTED**, and Count IV of Vetnos's Complaint, filed in the 1:24-cv-05568 action, is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 28th day of July, 2025.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE